**HENDERSON CLAY PRODUCTS,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 3080.

United States District Court
E. D. Texas,
Tyler Division.

March 11, 1966.

B. L. Bird, Fort Worth, Tex., Charles W. Shaw, Henderson, Tex., for plaintiff.

Wm. Wayne Justice, U. S. Atty., Tyler, Tex., Wm. A. Miner, Stanley F. Krysa, Dept. of Justice, Washington, D. C., for defendant.

SHEEHY, Chief Judge.

This is an action in which the Plaintiff seeks to recover income taxes which he alleges and contends the Internal Revenue Service wrongfully assessed against and collected from it for its fiscal year 1955. Most of the pertinent facts were stipulated by the parties. The facts as stipulated and as found by the Court are as hereinafter stated.

Plaintiff is a Texas corporation with its principal office in Henderson, Texas. It owns clay pits and deposits located near Henderson and is engaged in the business of mining the clay from said pits and deposits and processing such clay into brick, which it sells throughout the United States. It keeps its books on the basis of a fiscal year ending March 31 and uses the accrual system of accounting. The fiscal year involved in this action is the fiscal year that ended March 31, 1955, which year hereinafter will be referred to as 1955. The principal question presented in this case relates to the depletion allowance the Plaintiff, as an integrated-miner manufacturer, is entitled to take on its clay that it mined and manufactured into brick in 1955.

This is the second action that the Plaintiff has brought in this Court for income tax refund wherein the question involved relates to the depletion allowance it was entitled to take on the clay it mined and manufactured into brick. The other case, hereinafter referred to as the prior case, was Civil Action No. 2463 on the docket of this Court and involved the years 1951–54. As reflected by the Opinion of the Court filed as the Findings of Fact and Conclusions of Law in that cause (Henderson Clay Products v. United States, D.C., 199 F.Supp. 304), this Court found and concluded that the first commercially marketable product obtained by Plaintiff in the mining of its ball clay was shredded ball clay which had a value of $10.50 per ton during the years involved in that case, and that Plaintiff's depletion base for income tax purposes

for those years was the product of the number of tons of ball clay mined and processed by Plaintiff during a tax year times the value per ton ($10.50) of said shredded ball clay. The Court of Appeals for the Fifth Circuit reversed the judgment of this Court in that case and, in so doing, held that the Plaintiff, in determining the depletion base on its ball clay it mined and used in the manufacturing of brick, must use the proportionate profits method provided for by Treasury Regulation 118, Sec. 39.23(m)–1(3). See United States v. Henderson Clay Products, 324 F.2d 7, Certiorari denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186.

Plaintiff's pits and deposits, as mined in 1955, contained both ball clay and brick and tile clay. Plaintiff sold no raw clay; it processed all of the clay it mined into brick. During the fiscal year 1955 Plaintiff mined 8,850 tons of brick and tile clay which was sold in the form of brick for the sum of $109,614.72. Such brick and tile clay was used as an additive, principally for coloring purposes. In the same year Plaintiff mined and sold in the form of brick 50,151.8 tons of ball clay for the aggregate sum of $621,150.09—an average of approximately $12.38 per ton.

Plaintiff's operations of its clay pits and deposits in the year 1955 were substantially the same as in prior and later years, i. e., it used the stripping method. The clay was exposed by removal of the overburden and was removed by the use of a dragline and loaded into trucks which transported the clay approximately four miles to Plaintiff's plant. As removed from the pit or mine by the dragline, the clay was in large balls or lumps weighing up to 200 pounds. Upon reaching Plaintiff's plant, the clay was run through a shredder and shredded or disintegrated down to a small manageable size—about the size of a walnut. The clay was then moved to Plaintiff's pug mill or stored for later use in the pug mill. In the pug mill certain blending, grinding and screening was done to reduce the clay to a finer size. Water was added and the clay was formed into the shape of brick. From the pug mill the clay in the shape of brick went to dryers for extraction of the moisture and from there to kilns for burning into brick. The clay came out of the kilns in the form of finished brick and was either loaded for shipment and sale or stored for later shipment and sale.

Approximately 90% of the ball clay mined in the United States is mined in the Kentucky-Tennessee area. During the 1950's there were a number of persons and firms located in that area engaged as non-integrated miners in the mining and selling of ball clay. They, like the Plaintiff, used the strip mining method. They first removed the overburden and then removed the ball clay in large balls or lumps by a dragline or similar machinery and loaded it into trucks and transported same to the operator's plant. It was there run through a shredder and shredded or disintegrated to a small, manageable size —about the size of a walnut. Such clay at that point is commonly referred to as shredded ball clay. Some of the shredded ball clay was then shipped or stored for shipment, but about half of such ball clay was further reduced to a pulverized or powder size, generally referred to as air floated ball clay. In 1955 such Kentucky-Tennessee miners sold in excess of 400,000 tons of shredded and air floated ball clay all over the United States, including Texas and the Southwest. During the 1950's there was a market for shredded ball clay and air floated ball clay all over the United States, including Texas and the Southwest, and the average market price or value of shredded ball clay during such years and in 1955 was $10.00 per ton. The price of $10.00 per ton was the typical prevailing maket price for average shredded ball clay at the mine operator's plant, which the Kentucky-Tennessee miners received in such years for the shredded ball clay that they sold.

During the fiscal year 1955 there was a market for the shredded ball clay that Plaintiff produced and had Plaintiff chosen to sell its ball clay in the shredded form during that year it would have received an average of $10.00 per ton for said shredded ball clay.

At no place was ball clay sold in the raw state as it came from the pit or mine or at any point prior to the shredded stage. Such shredded ball clay was the *first commercially marketable mineral product* from the mining of ball clay.

The processes applied by the Plaintiff up to the transfer of its clay to the pug mill, as above described, were substantially the same as the processes applied by the Kentucky-Tennessee ball clay miners to produce shredded ball clay and were the ordinary treatment processes normally applied by owners and operators of ball clay mines to obtain the commercially marketable mineral product of shredded ball clay. Plaintiff's ball clay at such pre-pug mill stage was of a like kind and grade, i. e., it was average shredded ball clay and was the first commercially marketable mineral product of Plaintiff's ball clay operations. At that point Plaintiff's ball clay first became suitable for industrial use or consumption.

Plaintiff duly filed its income tax return for fiscal year 1955. In such return it deducted, as percentage depletion, from gross income to arrive at taxable income, 15% of the sales price of its brick, subject to the 50% of net income limitation. Thereafter, the Internal Revenue Service investigated such return and found that Plaintiff's clay was clay entitled under the applicable statutes to a depletion rate of 15%, but, as it did for the years involved in the prior case, determined the gross income from the property for depletion purposes by using the proportionate profits method provided for by Treasury Regulation 118, Sec. 39.23(m)–1(3), i. e., the gross income from the property was that percentage of the gross sales price of brick which the costs of mining and processing up to the pug mill bore to the entire cost of producing brick. Based on such findings and conclusions, the IRS determined a deficiency in Plaintiff's income tax for fiscal year 1955 in the total amount of $12,268.01. On February 11, 1957, Plaintiff paid said deficiency of $12,268.01, and on April 16, 1957, paid the interest on such deficiency in the amount of $1,219.91.

On December 27, 1957, Plaintiff timely filed with the IRS a claim for the refunding of income taxes for the fiscal year 1955. In such claim Plaintiff contended that the finished burnt brick was the first commercially marketable mineral product from its clay and, therefore, depletion allowance was to be based on the gross income from the mining of its clay as being the proceeds from the sale of its finished brick. By registered letter dated October 20, 1960, the IRS rejected such claim for refund. Thereafter, on or about July 31, 1962, Plaintiff filed an amended claim for refund for fiscal year 1955 with the IRS. By notice dated September 24, 1962, the IRS notified Plaintiff that no consideration would be given to Plaintiff's amended claim. The amended claim was filed subsequent to the decision of this Court in the prior case but prior to the decision of the Court of Appeals in said case. In the amended claim Plaintiff contended in the alternative that in calculating the depletion allowance it was entitled to on its clay its first commercially marketable mineral product obtained from the mining of its clay was shredded ball clay which had a market value of $10.50 per ton.

On December 7, 1961, Plaintiff timely filed with the appropriate District Director of IRS an election to have the provisions of Public Law 87–312, enacted September 26, 1961, 75 Stat. 674, applied in the determination of its income tax deductions for depletion of its brick and tile clay for the fiscal years 1955 through 1961. Plaintiff, by letter to the IRS under date of March 14, 1962, requested an extension of time until May 31, 1962, within which to file amended returns as to certain taxable years including its fiscal year 1955. By letter dated April 9, 1962, the IRS advised the Plaintiff that such requested extension of time would not be granted.

On December 19, 1961, Plaintiff timely filed with the IRS its return for the fiscal year ending March 31, 1961, showing no tax to be due for that year. However, Plaintiff at no time subsequent to the enactment of Public Law 87–312 filed an

amended income tax return for its fiscal year 1955. Refunds of overpayments of income taxes for the fiscal years 1955–1961 were not prohibited or prevented on September 26, 1961, by the operation of any law.

■ Insofar as depletion on ball clay is concerned, the holding of the Court of Appeals in the prior case is controlling in the instant case unless there is such a difference in the material facts in the two cases as would justify this Court in refusing to apply the holding in the prior case to the instant case. The Court finds that there is no such difference in the facts in the two cases. The only difference of any consequence in the facts in the two cases is that in the prior case Plaintiff's ball clay at the shredded stage had a value of $10.50 per ton, and the Plaintiff, during the tax years involved in that case, sold its clay in finished brick form for only $8.75 per ton. Whereas, in the instant case Plaintiff's ball clay at the shredded stage had a value of $10.00 per ton, and Plaintiff, during the tax year in question, sold its ball clay in the form of finished brick for approximately $12.38 per ton. This factual difference is insufficient to take the instant case out from under the holding of the Court of Appeals in the prior case. Therefore, this Court, following the holding of the Court of Appeals in the prior case, finds and concludes that as to the tax year in question the IRS properly used the proportionate profits method of computing the depletion base Plaintiff was entitled to use as to its ball clay and the deficiency assessment made against Plaintiff as a result of the use of such method was properly made.

■ The Court now passes to a consideration of the depletion allowance on its brick and tile clay Plaintiff is entitled to for the tax year in question. Plaintiff contends that it is entitled to have its depletion allowance determined under the provisions of Public Law 87–312, which provides a special method of determining the depletion allowance for brick and tile clay. That law provides, in effect, that a taxpayer must make an election in order to come within the provisions of that law for the purpose of applying Section 613 (c) of the Internal Revenue Code of 1954, with such election to be made in such form and manner as the Secretary of the Treasury or his delegate shall prescribe by Regulations. The required regulations were duly prescribed thereunder, being Sections 1.9004–1 through 1.9004–5. Sections 1.9004–1 and 1.9004–4 provide for the election to be made on or before December 11, 1961. Section 1.9004–4(b) not only provides for the time and manner of making such election but further provides that amended income tax returns reflecting any increase or decrease in tax attributable to the election *shall* be filed for the taxable years to which the election applies and *shall* be filed no later than March 31, 1962, unless an extension of time is granted by the IRS. Thus, in order for Public Law 87–312 to be applicable to Plaintiff's brick and tile clay for the tax year in question, it was necessary that Plaintiff timely elect to come within the provisions of the Act, which it did, and *that it timely file an amended income tax return for its fiscal year 1955,* which it failed to do. Plaintiff knew prior to March 31, 1962, that the regulations required that it file an amended tax return for 1955 in order to take advantage of the provisions of Public Law 87–312 as to its brick and tile clay, and there is no evidence of any conduct on the part of the Defendant or any of its officers, agents or employees that would relieve Plaintiff of the responsibility of timely filing an amended tax return for 1955. Since Plaintiff failed to file an amended tax return for the year 1955, the method of determining the depletion allowance for brick and tile clay provided for by Public Law 87–312 is not available to Plaintiff for its fiscal year 1955, and the IRS properly applied the proportionate profits method in arriving at Plaintiff's depletion base for brick and tile clay for such year.

In view of the findings and conclusions hereinabove made, the Clerk will forthwith enter judgment in this cause to the effect that the Plaintiff take nothing,

that the action be dismissed on its merits, and that the Defendant recover of the Plaintiff its costs of action.

This Opinion will constitute the Findings of Fact and Conclusions of Law in this cause.